I just want to thank the court for appointing me to represent Mr. Castellanos in these proceedings today. It's an important issue for Mr. Castellanos and other defendants throughout the circuit. The career offender enhancement changed Mr. Castellanos' total offense level from a 27 to a 34. That's a guideline change rate from 130 to 162 months to 262 to 327 months. So it really almost doubled his guideline range because the career offender enhancement was applied to him. Now, Mr. Castellanos pleaded guilty to delivery of methamphetamine over actual over 50 grams. And after that, the sentencing court applied the career offender enhancement to him because of two prior convictions that he had in Iowa State Court. Why does the United States v. Ford, which holds that this precise statute is divisible, completely foreclose this claim? I believe that Ford was saying that if you look at the different distinctions in the Iowa statutes, when you look at what's a Class B or Class C felony, the statute changes based off of the type of controlled substance involved, so marijuana, meth, etc. And it changes based off the quantity involved. Now, Mr. Castellanos' argument is that, yes, that's true. Those all change and those have different distinct offenses. And so the court can look at them as elements. However, the language, a controlled substance, a counterfeit substance, or a simulated substance applies to all of those. That's one element. Controlled substance, counterfeit substance, or simulated substance is all one element. That never changes throughout, whether it's a Class B felony, a Class C felony, any other type of felony under the Iowa statutes. I guess I'm not understanding you. So because this doesn't involve a counterfeit substance. This involves actual methamphetamine. And we recognized in Ford that the different types of controlled substances are different elements. And so I'm not quite following your argument as to why Ford isn't applicable here. I would say that those are not different elements. Those are different factual means for one element. I'd say what it would be like in math is when it's a burglary. I'd say, well, if it's a building or structure or land or air or water vehicle. The United States Supreme Court said that are different various means all for one locational element. And so I would say the Iowa statute functions in this way. It functions the same way. It's either a controlled substance or a counterfeit substance or a simulated substance. And because those are various factual means, they're not elements. That distinction between means and elements is pretty, I know. It's tough. Yeah. Yeah, I agree. It's very, very different. But I think that that example. Counsel, you have a very good brief. Thank you. I think that's why, in my opinion, you end up getting oral argument. But you're aware by the 28J letters, you're aware of these unpublished opinions. I am, Your Honor. Boy, Locke and Chapman and Chapman wasn't a 28J. And Wadden and I think the clerk found even more. There's a flood of them that just appear facially to just eviscerate your claim. You did a good job on Brown pre-Mathis. I see what you say about that. And I realize those cases, all three of them I just mentioned, are unpublished opinions. But tell me why they're not right. Yeah. I think that that's just because I think Mr. Castellanos is doing the correct categorical and modified categorical. And those three cases didn't. Yes. I'm sorry to say that by the Eighth Circuit, but I have to if I want to win my case. Yeah, yeah. No, no. They're unpublished opinions, Counsel. You heard my preface. That's why, in my opinion, that's why you're here. It's unpublished, so you get to argue that we shouldn't publish it. Yeah. So give us your best shot. All right. So I think it's fine if something's divisible. And you only do the modified categorical approach after you do the categorical approach. I think that the government's position in this case is that the categorical approach also foreclosed, in my opinion. But in my opinion, yes, to be a controlled substance offense under the career offender enhancement, as defined what a controlled substance offense is in the sentencing guidelines, it needs to be a controlled substance or counterfeit substance. Now, the Iowa statutes obviously use that broader language of controlled substance, counterfeit substance, or simulated controlled substance. So for that reason, we're arguing that the Iowa statutes are, in fact, overbroad. They're using a completely different language. And so categorically, they cannot be. On that point, we have a case called United States v. Brown, a 2011 case.  Stimulated controlled substance qualifies as controlled substance offense. What effect does that have on your case here? I think that the Iowa legislature used the different words, and just by the plain meaning of what a counterfeit substance is and what a simulated substance is, that they are different things. I guess the assumption is always that the federal government knows what the state lawmakers are doing. I think the inverse can also be true. The state lawmakers know what the federal government was doing. This was a state law that was meant to encompass more offenses than what the federal government was doing, and it was meant to be brought and be able to prosecute more offenses. It sounds to me like you're arguing Brown was wrongly decided. Am I correct? I think I have to. Okay. I just want to be clear about what you're doing. In your brief, I couldn't quite tell. But you're correct. Go ahead. But you said it's pre-Mathis. That is your pre-Mathis, so that would be my distinction. That's your best shot on that. So that would be my distinction. Not to make the argument for you, but that is your best shot. So if we're doing that master's categorical and modified categorical approach, then I would say we need to make some new steps and say let's do Brown. I understand the pre-Mathis point. I would just add one thing, which is the ACCA versus sentencing guidelines. You're not making that distinction here. I just want to be clear about that. I don't think so. I'm just using the definition of the controlled substance offense that's in the sentencing guidelines. And so after we proceed to that categorical approach, which I argue makes the Iowa statute overbroad, we then do proceed to the modified categorical approach. And that's where we get into that different disjunctive means versus different disjunctive elements debate and what that exactly all means. And I really do think that the examples that the United States Supreme Court uses in Mathis are best. It says, well, what's a deadly weapon? And if they describe it as, well, it could be a tire iron or a knife or a gun, et cetera, those are different various factual means. Those don't need to be proven by the state or government beyond a reasonable doubt. Those can just be various ways that they can prove their one element of deadly weapon. And then the other example that they have is a building in Iowa's burglary statute. They said it was not a predicate offense under the Armed Career Criminal Act. And for that, it was the same way. It was a building or structure or land or air or water vehicle. And so those are various factual means because the government did not need to prove each one of them specifically. In fact, the jury didn't even need to agree on those. And the Iowa case law is pretty clear that that's how the Iowa courts have always read their offenses, which is that it can be a controlled substance or counterfeit. And as long as, you know, 12 jurors say one of those, that's the one element that they need. And I think I've reserved two minutes. Yes. So I'll take the time. Take it right now. Thank you. Thank you. Mr. Call. May it please the Court. Counsel, my name is Andrew Call. I'm an assistant U.S. attorney in the Southern District of Iowa, and I represent the United States. In this appeal, there is no question that the defendant had prior convictions for, one, delivery of methamphetamine and, two, possession of methamphetamine with intent to deliver under various subsections of Iowa Code, Section 124.4011. This appeal is one of a series of arguments we've been seeing in the last few years, suggesting that for some reason or another, that section of the Iowa Code doesn't qualify as a controlled substance offense under the sentencing guidelines. The United States respectfully submits that it continues to be a controlled substance offense and that this case is largely controlled by Ford and what we refer to as Brown II in our briefs. Talk to me about Ford. On Brown, opposing counsel concedes, I've got to argue that that's wrong because of meth. So I understand that. But respond to opposing counsel's argument on Ford, which I didn't fully follow, but I want to see what the response is on it. In looking at Ford, I think it's important to look at the specific subsections of the Iowa Code, and if we do that, that demonstrates why these are elements and not means. The delivery of methamphetamine in this case was the delivery of methamphetamine involving more than 5 grams but less than 5 kilograms under subsection B-7, which is a Class B felony. The possession with intent to deliver involved 5 grams or less under subsection C-6 of that same Iowa Code section, which was a Class C felony. That, again, demonstrates that those two offenses are different and that the drug type or, in this case, quantity is an element. Subsection C-8 sets forth the penalty for a situation involving a counterfeit controlled substance and makes it a Class C felony. It's in that same structure of the statute that Ford discussed. In Ford, it was, I believe, cocaine and cocaine-based. So your argument is that even though Ford addressed the specific controlled substances, I believe, like methamphetamine, cocaine, et cetera, that the distinction between counterfeit controlled substances and controlled substances themselves is also divisible. Correct. Okay, I understand. And I think I understand better now the defense counsel's argument as well. That is our position. And our position, I mean, the Brown series of cases are interesting in that Brown 1, which the defendant relied upon principally in the district court, had to do with the definition of felony drug offense under Title 21. But when we got the same case back, Brown 2, and Brown 2, I believe, was in fact under the career offender guideline, the fact that it was a simulated controlled substance did not make a difference. Unless the panel has any further questions, and as to the other issue we submitted on the brief, I thank the court for the opportunity to appear and would release the balance of my time. Seeing no questions, thank you, Mr. Call. Mr. Smith, we're back to you. All right, well, I'm concerned I've been misunderstood. So I guess this is the way I would explain Ford. Under the Iowa statutes, you can be convicted of a Class B felony for having a controlled substance that is 50 grams of meth, possessing that with intent to deliver. You can be convicted of a Class B felony for a counterfeit substance of 50 grams of meth. You can be convicted. They're all the same Class B felony. That doesn't change. That language, whether it's controlled or counterfeit or simulated, it doesn't matter. It does not change how it's punished. It doesn't change the elements that the state needs to prove. It doesn't. These are just various factual means of getting to that one place, which is we need something involving a controlled substance, whether it's simulated, actual, or counterfeit. So I guess that would be my argument why that portion of the statute is not divisible. Unless there are any questions, then I yield. Seeing none, thank you both for your arguments. Case number 19-1219 is submitted for decision by the court.